## Hall, Appellant, *v*. Hall.

Argued May 4, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*S. Y. Rossiter,* for appellant.

*P. V. Gifford,* for appellee.

OPINION BY BALDRIGE, J., July 10, 1936:

On August 30, 1934, Madeline M. Hall filed a libel in divorce on the grounds of desertion. The case came

on for trial on January 24, 1935, before Judge Rossiter, who, after hearing testimony upon the part of both libellant and respondent, refused the divorce and dismissed the libel. About five weeks thereafter—February 28, 1935—the libellant instituted a new divorce proceeding, again charging desertion. The subpoena and alias subpoena were returned n. e. i. In due time a master was appointed, who took testimony upon the part of the libellant, the respondent not being present or represented, and he recommended a divorce. Exceptions filed thereto were sustained by Judge Hirt, who, in the course of his opinion, said: "Nowhere in this case, however, is there a reference to the divorce proceeding in No. 22, November Term, 1934, in this county, in which Madeline M. Hall also was the libellant and George R. Hall the respondent and in which a divorce was refused and the libel dismissed at the costs of libellant. That record clearly shows that this libellant did not have the necessary residence in this state and that, in the opinion of Judge Rossiter, the libellant should be prosecuted for perjury on her testimony. In refusing a divorce in the instant case, we ordered that the record of the previous action be made a part of the record in this case."

The parties were married in New York City, May 16, 1923, when the libellant was a resident of St. Louis, Mo., and the respondent of New York City. After their marriage, they lived in either New York or New Jersey until 1926 when difficulties arose and the libellant went to Dunkirk, N. Y., where her mother resided. In the fall of 1927 she returned to her husband and they lived in Elmhurst, L. I., until January, 1928, when the libellant again withdrew from their home and returned to her mother with their only child, a boy, who is now 12 years of age. The libellant testified that she remained there until August, 1933, when, accompanied by her son, she moved to Erie, where she has since been making

her home with her sister. She is employed by "Book House" as a saleslady and in teaching or training other employees.

It appeared in the testimony taken at the first proceeding that she maintained an apartment until June, 1934, and an office, in Buffalo. She had a bank account there, as well as in Dunkirk, but none in Erie. She owned an automobile and took out a license therefor in New York state in 1934, giving her residence as Buffalo. The libellant explained that her territory included part of Pennsylvania and New York state and for the purposes of her business it was necessary for her to have her headquarters in that city.

The respondent testified in the original case that his wife had told him she had been advised that she could obtain a divorce, and that he would not be permitted to see the child until he would come to Erie and accept service in the divorce proceeding, and that her attorney had communicated with him at different times, offering to pay his expenses to the nearest point in Pennsylvania if he would accept personal service of the subpoena; that she endeavored to influence the manager of the organization by whom he was employed to persuade him not to contest the divorce or raise a question as to her residence.

It thus clearly appears that there was ample evidence to support the conclusion reached by Judge ROSSITER that the libellant had not maintained a residence within the state of Pennsylvania, as contemplated by our divorce laws.

The libellant challenges the right of the learned court below to order the record in the first case made a part of the present proceeding. We concede that generally a court in deciding one case will not take judicial notice of what appears from its own record in another and distinct case, even though the action is between the same parties: Com. ex rel. v. Ball et al., 277 Pa.

301, 121 A. 191. But a divorce proceeding is different from an ordinary civil action, as it has its own distinguishing features to be considered.

While an action to dissolve a marital relation is nominally between two parties, the state, because of its concern in maintaining the marriage relation, unless good cause is shown for its dissolution, is an interested party. It has been recognized by eminent writers on the subject, as well as our decisions, that it is really a triangular proceeding, in which the husband, the wife, and the state are involved. While the state does not necessarily oppose, it is the duty of a court to see that when an attempt is made to sever the relation it shall not prevail without sufficient and lawful cause shown by the real facts on which the state permits a divorce to be granted, and to discover and defeat any attempted collusion and fraud. There is a liberal legal discretion vested in the courts to accomplish this purpose.

In Decker v. Decker (Ill.), 61 N. E. 1108, the court there said that a separation of husband and wife by a judicial decree concerns vitally not only the children, if any, but the home life and domestic relations of the people, the public morals, and in a greater or lesser degree the welfare of every citizen. It cited with approval 2 Bishop on Marriage and Divorce, p. 330, §314, as follows: "A cause (divorce) is never concluded against the judge, and the court may, and, to satisfy its conscience, sometimes does, of its own motion, go into the inquiry of matters not involved in the pleadings." See, also, 9 R. C. L. §§11, 12; Ponthus v. Ponthus, 70 Pa. Superior Ct. 39; Upperman v. Upperman, 119 Pa. Superior Ct. 341, 181 A. 252.

It is unnecessary to consider and determine whether the testimony of the respondent, who did not file an answer, was admissible in the original action. The records show that he testified without any objection

being made, and no appeal was taken from the decree entered by the court. It is too late therefore for the libellant to attack the admissibility of his testimony.

We are in entire accord with the conclusion reached by the court below.

Decree is affirmed, at appellant's costs.