## Thies v. Thies

*Marsh, Spaeder, Baur & Marsh*, for libellant.

LAUB, J., April 18, 1946.—Libellant filed her libel November 19, 1942, alleging as grounds for divorce cruel and barbarous treatment and indignities to her person. Included in the libel was the statement: "The respondent is non compos mentis and a hopeless lunatic having been confined to Warren State Hospital on June 6, 1938, where he still is." Service of process was had upon respondent personally and also upon his committee appointed by the court. The action was uncontested

and on November 24, 1945, the master filed his report recommending that the divorce be granted.

Section 53 of the Divorce Law of May 2, 1929, P. L. 1237, provides:

"Upon the hearing of any case before the court, a master or jury, where the petition or libel sets forth that the respondent is a lunatic, the question of lunacy shall be fully established by expert testimony, together with every other matter of fact that is affirmed by one party and denied by the other. No divorce shall be granted to the libellant, in any such case, unless it be proved beyond a reasonable doubt that the respondent is hopelessly insane, but, if any respondent has been for ten or more years an inmate of any asylum for the insane, it shall be conclusive proof of hopeless insanity."

At the hearing, no expert testimony was produced relative to respondent's mental condition. There was offered in evidence a letter addressed to libellant's attorney and signed by the superintendent of the Warren State Hospital, the concluding paragraph of which states: "We are not in a position to make a statement that the patient was at any time a 'hopeless lunatic or non compos mentis'." In addition to this letter the only reference to respondent's mental capacity was a series of answers developed on the master's cross-examination of libellant. The purport of these answers was that libellant had assumed respondent to be a lunatic because of his confinement in the State hospital.

Obviously, the letter from the superintendent of the Warren State Hospital was clearly inadmissible as evidence. It would have been inadmissible under ordinary circumstances but is particularly so because here the burden and method of proof as to mental incapacity is specifically set forth by an act of assembly. Care always should be exercised in any divorce case to observe the rules of evidence, and the fact that there is

no appearance for respondent requires that the master use more than ordinary diligence in preserving his rights. "A master occupies, for the time being, a quasi judicial position, which requires as strict impartiality on his part as if he were a judge hearing the case": Kolopen v. Kolopen, 148 Pa. Superior Ct. 311, 313. Where a respondent is insane or alleged to be insane and is unable to be present at the hearing to controvert testimony produced against him, the libellant's testimony should be carefully scrutinized: Simon v. Simon et al., 113 Pa. Superior Ct. 577. It must also be observed that the Commonwealth is an interested third party and its policy is a thread that must be woven into the pattern of every divorce action.

"Whether the marital contract shall be severed is the gravest of questions, not alone to the parties, but to the state, for the social structure rests upon it": Middleton v. Middleton, 187 Pa. 612, 615.

Upon consideration of the testimony we requested a brief on our authority to grant the divorce. Libellant then, on March 18, 1946, presented a petition to amend the libel by deleting from it the above-quoted paragraph alleging respondent's insanity. Upon this petition we granted a rule to show cause.

Jurisdiction to grant divorces where respondent is a lunatic is conferred by section 18 of the Divorce Law of 1929, supra. This section provides in part as follows:

"In cases where a spouse is a hopeless lunatic, or non compos mentis, the courts of common pleas shall have jurisdiction to receive a petition or libel for divorce in which such lunatic or person non compos mentis is made the respondent, but only for a ground provided for in section ten of this act."

Since the grounds for divorce alleged in this libel are included in section 10 of the act, our only concern

is whether or not respondent's mental condition is such as would justify our assumption of jurisdiction. Our ultimate decision must, of course, result from a determination of the legislative intent. If the legislature intended to restrict decrees to those instances where the respondent is hopelessly a lunatic or hopelessly non compos mentis only, then we are powerless to grant the decree prayed for.

Bouvier's Law Dictionary defines non compos mentis as "A generic term, including all the species of madness, whether it arise from idiocy, sickness, lunacy, or drunkenness. Co. Litt. 247; 4 Co. 124; 4 Comyns Dig. 613; 5 id. 186; Shelf. Lun. 1." A lunatic is one who is insane, or mad. An idiot is not a lunatic as that term is used in medicine or lay discourse.

"There are by universal consent two great divisions of mental disorder, and these have long been recognized, both in law and in medicine. They are 'idiocy' and 'insanity.' In the former the defect is said to be acquired before, in the latter after, the normal development of the brain. In the former the patients are born insane; in the latter they become so. The insane have, at one time, enjoyed mental health; the idiots have never had a sound brain": 1 Wharton and Stille's Medical Jurisprudence (Pa.) §1073.

By this differentiation it can be seen that the legislature never could have intended idiocy to be included in the category comprehended by the language of section 18. For a libellant to prevail in an action of divorce against an insane spouse, the cause must have arisen prior to the incidence of insanity: Hickey v. Hickey, 138 Pa. Superior Ct. 271. In idiocy this could not be since idiocy springs into existence at birth.

"An idiot, or natural fool, is one that hath had no understanding from his nativity; and therefore is by law presumed never likely to attain any": 1 Sharswood's Blackstone's Commentaries 301.

By the addition of the words "non compos mentis" after the words "hopeless lunatic" the legislature was quite obviously attempting to extend that term so as to preclude any doubt as to the class intended to be included therein. Strictly speaking, the term "non compos mentis" is redundant for it encompasses the same group previously designated as lunatic. That the word "hopeless" is intended to modify both terms is also obvious. If this were not true, then the precise meaning desired would be expressed by either the word "lunatic" or the words "non compos mentis" standing alone and without modification.

We therefore conclude that the word "hopeless" modifies non compos mentis as well as lunatic. A different construction would imply that the legislature contemplated actions in divorce against persons temporarily insane. If such were its intendment the use of the words "hopeless lunatic" would be entirely unnecessary since the generic use of non compos mentis would include all types of mental derangement whether temporary or permanent.

Our interpretation of section 18 of the act is somewhat supported by section 45 which provides for alimony in those cases where a husband sues for divorce from an insane wife. This section provides that in proper cases the court may decree alimony for the support of such insane wife during the term of her natural life. It does not use the words "hopelessly insane" but uses the word "insane" without qualification. Had the legislature deemed it possible to secure a divorce from a person temporarily insane, then, in keeping with its policy of prohibiting alimony in cases of absolute divorce, it undoubtedly would have provided for support for the period of such temporary insanity only. However, since it apparently contemplated that divorce could be granted only to the spouse of a person hopelessly insane, the provision with

respect to support for the natural life of such insane respondent was clearly indicated.

If a libellant be entitled to secure a divorce from every insane respondent section 53 of the act serves no purpose and is meaningless. It will be observed that this section specifically prohibits the grant of a divorce in any case where insanity is alleged in the libel unless it be proved beyond a reasonable doubt that respondent is hopelessly insane. Therefore, if the proof falls short of this mark and rises only to the point where temporary insanity is established, the act constitutes a specific barrier against the entry of a decree.

It was obviously the legislative intent in the enactment of this statute to prescribe for exactly the situation that obtains in the case at bar. It provides a mantle of protection for respondents temporarily insane by prohibiting the procurement of a divorce for the duration of such temporary mental incapacity, thus giving to this class of respondents an opportunity after cure to interpose such defenses as they may have. At the same time the statute provides a remedy for those libellants who are married to persons hopelessly insane or to those who fall within the statutory equivalent of hopeless insanity by being in a mental institution for a period of 10 years. When proof of hopeless insanity or its statutory equivalent is available, a libellant is afforded the opportunity to proceed without having to wait for an eventuality which will never come to pass, that is, the termination of the mental disease.

We conclude that in Pennsylvania no action in divorce can be maintained against a respondent who is only temporarily insane.

The libel having been filed November 19, 1942, libellant had ample opportunity between that date and November 12, 1945, when the master was appointed, to

ascertain the mental condition of respondent and to govern her proceedings accordingly. Consequently the present application for leave to amend the libel is tardy and under ordinary circumstances would be refused. However, in view of the apparent novelty of the legal problem involved, and in view of the tendency of the law to decide issues upon the merits, we shall refer the testimony back to the master with instruction, after additional notice to respondent, to inquire diligently into his mental capacity and to make further report to the court. We shall then determine whether or not to allow the amendment. By making this order we are not indicating that libellant is entitled to a divorce on the merits. Such decision must rest upon the proof to be adducted at the subsequent hearing and upon our consideration of all of the testimony.

And now, to wit, April 18, 1946, the testimony is referred back to the master for further proceedings consistent with this opinion, due notice of said further proceedings to be served personally upon respondent.