## Strachovsky v. Strachovsky

*Maurice J. Coughlin,* for libellant.
*Brooks, Curtze & Silin,* for respondent.

LAUB, J., June 21, 1947.—This is a divorce case. Libellant is a Russian citizen but domiciled in Pennsylvania. Respondent is a Rumanian citizen domiciled in France. The marriage took place in London, England,

on July 24, 1927. The grounds for divorce alleged in the libel are cruel and barbarous treatment, indignities to the person and desertion. The master has recommended the entry of a decree upon the ground of indignities only.

We shall not discuss the evidence produced at the hearing since this case must be referred back to the master for further investigation. The district attorney of this county, deeming it his duty to do so as the Commonwealth's counsel, has called to our attention certain matters which, if true, might materially affect the ultimate disposition of the suit. They indicate that, on April 10, 1941, libellant was bigamously married to a person not the present respondent; that such marriage took place at 89 Remington Place, New Rochelle, N. Y., before Hon. Thomas N. Fasso, judge. They refer further to the sworn application for a marriage license made at that time by libellant and in which he stated that he had not previously been married.

The above conduct by libellant, if true, would not constitute him an "injured and innocent spouse" within the general understanding of those terms. But, since it arose following the alleged indignities of respondent, there is some doubt that the law would use it as a bar to divorce on this ground: Reichl v. Reichl, 37 D. & C. 477; Clark v. Clark, 160 Pa. Superior Ct. 562. However, there are two reasons which make it imperative that there be a full disclosure of the facts. The Divorce Law of May 2, 1929, P. L. 1237, sec. 25, as amended, 23 PS §25, specifically indicates that a divorce should not be granted except where the libel is filed "in sincerity and truth for the causes mentioned". As was said in Angier v. Angier, 63 Pa. 450, 458:

"If it should be shown in any case that the application is not, in fact, based upon the grounds stated, but that the causes set forth are merely to advance a scheme or trick to make out a technical case to sever the bonds of matrimony, no court would permit the

application to be successful. It would be against law, justice and truth to do so. Courts ought never to sever the marriage contract, but where the application is made 'in sincerity and truth,' for the causes set forth, and no other, and fully sustained by testimony."

Was the libel in this case filed in sincerity and truth for the causes alleged, or was it fictitiously originated and intended as a lever to pry libellant loose from an embarrassing complication created by his own improper conduct? In our opinion the success or failure of his action depends upon a favorable resolution of this question. It follows in consequence that the facts must first be determined.

Investigation is important from another standpoint. One who holds the marriage estate and the sovereign laws of the country of his adoption in such contempt that he would commit bigamy to serve his own aims might not be above perjury. A fortiori, one who, in contemplation of a criminal act makes a false affidavit in the furtherance thereof, becomes at once an individual of doubtful credibility. The master, being in ignorance of these matters, formed his appraisal of libellant's testimony from the record before him. If that record did not reveal the true picture, justice would require its enlargement.

We have been somewhat concerned over the fact that our information was acquired ab extra. It bears no resemblance to legally competent evidence in its present form, being, in fact, the purest sort of hearsay. May a court, in a divorce case, go outside the evidence before it as a basis for requiring further investigation? We think so. Obviously, it could not base a decree upon such unscientific and problematical considerations. But this is not in contemplation here. All we are seeking is further information, obtained in a thoroughly competent fashion, so that the record will fully reflect the circumstances at the time we make final disposition.

In this Commonwealth the State is always an unnamed third party in every divorce proceeding: Huston v. Huston, 130 Pa. Superior Ct. 501. "Whether the marital contract shall be severed is the gravest of questions, not alone to the parties, but to the state, for the social structure rests upon it": Middleton v. Middleton, 187 Pa. 612, 615. Does this imply that a court is impotent to require the fullest investigation where suspicious circumstances are called to its attention? The implication is to the contrary. " 'A cause (divorce) is never concluded against the judge, and the court may, and, to satisfy its conscience, sometimes does, of its own motion, go into the inquiry of matters not involved in the pleadings' ": 2 Bishop on Marriage and Divorce, p. 330, §314, cited with approval in Hall v. Hall, 122 Pa. Superior Ct. 242, 246, where the lower court, on its own motion, had considered the record in a previous divorce action between the same parties.

Despite the fact that the Commonwealth is an interested third party to every divorce action, we have set up no machinery whereby a representative of the State can legally become a party litigant in its behalf. If the Commonwealth is interested it would appear that the Attorney General or the district attorney (who is, by inference at least, ex officio a Deputy Attorney General; see Commonwealth v. Lehman, 309 Pa. 486) should have either the duty or the authority to enter an appearance for the purpose of protecting the public interest. Evidently they have neither. Our research has developed no Pennsylvania authority in point, but the weight of foreign precedent denies the right of the State's officers to appear and contest. See State ex rel. Fowler v. Gladys M. Moore, 22 A. L. R. 1101, and the annotations thereto.

Where then rests the duty of guarding the public interest? Unless the expressed policies of the Commonwealth are nothing but high-sounding, hollow phrases, some officer, agent or tribunal should be

charged with the task. 1 Freedman on Marriage and Divorce 258, §105, states flatly: "The policy of Pennsylvania and of most of the American states is left to be guarded by the tribunal which hears the divorce suit." In Hall v. Hall, supra, the Superior Court said (p. 246):

"While the state does not necessarily oppose, it is the duty of a court to see that when an attempt is made to sever the relation it shall not prevail without sufficient and lawful cause shown by the real facts on which the state permits a divorce to be granted, and to discover and defeat any attempted collusion and fraud. There is a liberal legal discretion vested in the courts to accomplish this purpose."

It therefore appears that the duty "to discover and defeat" a fraud in divorce actions rests with us. If this is so, obviously we cannot exercise that function if shackled by the narrow limits of the record before us. That we cannot go outside that record to either grant or refuse a divorce goes without saying. But this does not imply that, notwithstanding we have information to the contrary, we must blindly accept such testimony as libellant, in the furtherance of his plan, sees fit to offer.

Under the peculiar circumstances which obtain here we believe we are acting entirely within our prerogatives. This does not mean that we deem it our privilege to resubmit divorce matters in every case where third parties see fit to interpose objections or to convey hearsay matters to our ears. Such conduct would not only be oppressive to deserving libellants but would be an invitation for improper meddling on the part of those who have the natural bent for such things. But here our information is received from an officer of the court and is well documented. Under such circumstances we think our discretion is wisely exercised when we return the record to the master with instruc-

tions to investigate further. See Weymers v. Weymers, 81 Pa. Superior Ct. 432.

And now, to wit, June 21, 1947, the within matter is returned to the master with directions to proceed in a manner consistent with the foregoing opinion.