## Commonwealth v. Vandemark

*C. Wayne Smyth*, for Commonwealth.

*J. Roy Lilley*, for defendant.

ROSENFIELD, P. J., April 5, 1948.—This is an appeal by defendant from a summary conviction for violation of section 730 of The Game Law of June 3, 1937, P. L. 1225, 34 PS §1311.730. Defendant was sentenced by the magistrate under section 731 thereof to pay fine of $10 and undergo imprisonment in the county jail for a period of 10 days.

On November 25, 1947, defendant was brought before the justice of the peace charged with failure to stop a motor vehicle, which he was operating upon the public highway, upon request or signal of a game warden in uniform, in violation of section 730 of The

Game Law. Defendant entered a plea of not guilty, whereupon the case was continued to November 28, 1947, when, after hearing, the justice of the peace found defendant guilty and sentenced him to pay a fine of $10 and undergo an imprisonment in the county jail for a period of 10 days. On November 25, 1947, same defendant had entered pleas of guilty before the same justice for violation of article VII, secs. 701 and 704 of the same statute, and on the same day, November 25th, had paid fines of $100 and $50 and costs respectively in the said cases.

Defendant petitioned the court of quarter sessions for the allowance of the appeal and assigned the following as reasons for the said appeal:

"He further represents that he has a good defense to said charge, and, in any event, the sentence is illegal as a justice has no power to give a sentence of imprisonment, except on conviction of second offense, and no proof of such conviction was offered at the trial."

The then president judge, Hon. Charles M. Culver, allowed the appeal but did not hear the case.

At the time of the hearing de novo before us, the Commonwealth proved that defendant committed the two prior offenses. Though defendant took the stand he did not deny that he was defendant in the other two actions for which he was sentenced and paid fines on November 25, 1947. His identity as defendant in those cases and the fact that he entered pleas of guilty therein and was sentenced thereon on November 25, 1947, were clearly proven.

The record of the justice of the peace in this appeal contains proof of the prior conviction before the same justice at the time of the hearing, November 28, 1947, for the transcript contains the following: "In as much as Raymond (Pat) Vandemark had already pled guilty to the charges of possessing and transporting a deer illegally killed, I find myself clear by section 731, to

impose an additional penalty of 10 days in jail, in addition to the penalty of $10.00."

Since this record, as aforesaid, indicates that the justice of the peace performed his duty and that he found that defendant was the same person who had paid the previous fines, we are satisfied that there was proof thereof before the magistrate, even though the exact manner in which the magistrate performed his duty does not appear, nor are we concerned therewith on appeal. All three cases were heard by the same magistrate within a period of three days. On appeal before this court the justice of the peace appeared with his docket, identified defendant as the same defendant who was charged with the crimes in the other two entries in his docket, namely, violation of sections 701 and 704 of The Game Law, and who paid him the fine and the costs on November 25, 1947. Under the circumstances, we believe that our predecessor might well have refused to allow the appeal, but gave defendant the benefit of his allegation that there was no proof of a prior conviction. This allegation proved to be without foundation and contrary to the facts.

After the hearing de novo before this court, defendant's counsel raised three questions, the first of which is as follows:

"The complaint in this case shows that defendant was not charged as a second offender."

Admittedly, the original complaint before the justice of the peace did not refer to the other two convictions and did not specifically charge defendant as a second offender under The Game Law. We are not concerned with the regularity of the complaint or the proceedings before the magistrate which should be brought before the court of common pleas on certiorari. In Commonwealth v. Scott-Powell Dairies, 128 Pa. Superior Ct. 598 (601) (1937), involving an appeal from a summary conviction, the court said:

"Appellant complains that the information upon which the magistrate issued the warrant against it was defective. However, the proceeding below was an appeal to the court of quarter sessions, where the case was heard de novo; appellant did not choose to proceed by certiorari in the court of common pleas. See Com. v. Benson et al., 94 Pa. Superior Ct. 10.

" 'If after the magistrate decided the case, a certiorari had been issued the regularity of the proceedings would have been before the court. Every part of the record including the complaint would have been sent up, Sadler Criminal Law Procedure, p. 569, Constitution of Pennsylvania, Article 5, Sec. 10, and the judgment might have been set aside, but "the defendant having proceeded by appeal must be presumed to have waived all mere technical errors in the proceedings of the justice, which did not go to the jurisdiction of that officer." ' "

Counsel for defendant referred to no authority sustaining his position or discussing the method of procedure before a justice of the peace, nor does the statute prescribe any particular method of procedure. Section 731 reads as follows:

"Any person convicted of a second or subsequent offense shall be liable to the fines above provided and costs of prosecution, and, in addition thereto, shall in the discretion of the court, suffer imprisonment one day for each dollar of fine imposed."

Section 1213, previously cited, does not prescribe any definite method of procedure.

Defendant has in mind the rule applicable to statutes governing imprisonment of second offenders to the effect that there should be an averment of the former conviction made in the indictment. This rule has led to much confusion and has afforded the attorneys representing defendants opportunities to take inconsistent positions. If no averment of a former conviction is

made in the indictment, the attorneys for defendant complain against the omission thereof as in the case of Commonwealth v. Boyer, 37 D. & C. 81 (1940). They complain even more vigorously if the indictment does contain such an averment, for they contend that it violates the spirit of the Act of March 15, 1911, P. L. 20, 19 PS §711, as now amended by the Act of July 3, 1947, P. L. 1239.

The discussion by Judge Levinthal in the Boyer case, supra, page 83, is illuminating. It reads in part as follows:

"Pennsylvania, it is contended, has in numerous appellate court cases affixed its stamp of approval upon the prevailing majority practice. A careful analysis of those decisions will show, however, that the question is not entirely beyond debate.

"In the two earliest cases dealing with the problem, convictions were reversed because *nowhere in the record* did the fact of prior conviction and sentence appear, and the court apparently had determined this fact on its own knowledge: Smith v. Commonwealth, 14 S. & R. 69 (1826); Rauch v. Commonwealth, 78 Pa. 490 (1875). Though in both cases there is language to the effect that 'the former convictions did not appear in the indictment', the cases hold no more than that the increased punishment for a second offense cannot be sustained where the record fails to disclose that fact."

There is no hard and fast principle in the law that defendant should have notice before sentence on the second conviction that the additional penalty would be imposed. Such a requirement frequently would obviate the possibility of the imposition of such a sentence. In cases where the previous conviction is not discovered until after sentence, our Second Offender's Act of April 29, 1929, P. L. 854, as substantially reënacted by The Penal Code of June 24, 1939, P. L. 872, 18 PS §5108, provides for punishment of second offenders

even when the fact of prior conviction is not ascertained until after conviction and sentence for the second offense. See also Commonwealth v. Ashe, 146 Pa. Superior Ct. 482 (1941).

In the present case we are not concerned with the question of how the matter was raised before the justice. Though courts do not take judicial notice of their records in other cases (31 C. J. S. 623), there are exceptions to that rule: Hall v. Hall, 122 Pa. Superior Ct. 242 (1936).

"Also a court may take judicial notice of, and give effect to its own records in another interrelated proceeding": 31 C. J. S. 625.

Even if the justice took judicial notice of the other cases before him he did no more than was reasonable to bring about a decent enforcement of the law.

In any event the record of the justice of the peace disclosed the fact of the former conviction which is all that is required to protect defendant in his rights. "A strictness which would defeat most summary convictions" is not required: Commonwealth v. Borden, 61 Pa. 272 (1869) at page 276. He was bound to know from the record that he would meet this same problem in the court of quarter sessions to which he chose to appeal rather than to remove the record to the court of common pleas by certiorari. The record and proceedings before the justice gave him ample notice of the charge that he was to meet on the hearing de novo. After full hearing and a fair consideration of the testimony involved we must find defendant guilty of the offense charged and that he was previously convicted and sentenced for violations of sections 701 and 704.

Defendant's second contention is as follows:

"It is our contention that the intention of the legislators by the use of the word a second or subsequent offense meant an offense of the same character and that the offense of failing to stop on signal is so dis-

tinct from that of the charge of the illegal possession of a deer, that even though he had been regularly convicted of each and was being sentenced upon the second conviction, the penalty of imprisonment would not apply."

In other words, defendant contends that he would be a second offender if he violated section 701 twice but would not be if he violated section 701 and then 704, etc.

Again defendant's counsel cites no authority for his position. Though we recognize the rule that this statute, being penal in nature, must be strictly construed, the language of the legislature is clear. Section 731 talks about "a first offense" and "a second offense"; this provision is inserted at the end of section 731, which provides penalties for all the offenses in article VII, and all three offenses committed by defendant were against article VII, that is, against sections 701, 704, and 730. It is inconceivable that the legislature intended that a man should be deemed a first offender only, even though he should violate each of the sections 701 to 730 inclusive and be a second offender if he should violate section 701 twice. Defendant's contention necessitates the distortion of the plain language of the statute. Particularly is this true of section 1213, which provides when certain offenses shall be deemed second offenses, and which provides for a conviction or acknowledgment of guilt "for violating *any* of the game laws then in force" after "signing an acknowledgment of guilt under the provisions of this act".

Defendant's brief sets forth his last contention with arguments as follows:

"It is also our contention that, since the offense for which he was sentenced to imprisonment occurred prior to the offense for which he was first fined, he cannot be convicted and sentenced for a second and subsequent offense.

"Subsection 1213 provides as follows:

" 'Any person convicted or pleading guilty or signing an acknowledgment of guilt under the provisions of this act, who, prior thereto, was convicted or plead guilty or signed an acknowledgment of guilt for violating any of the game laws then in force, shall be sentenced under this act, and be denied by the commission or by this act the right to hunt anywhere, with or without a hunter's license, in the same manner as if such person had been convicted of a second offense against this act.'

"It is contended that this section authorized the sentence under the facts in this case. In our opinion, this only authorizes a refusal of the right to hunt and not of a jail sentence as a second offender.

"In Commonwealth v. Neill, 16 Superior Court 210, Judge Orlady said:

" 'To warrant the court in sending defendant to jail under this act, the record must affirmatively show that he has been convicted of a subsequent offense, which, in contemplation of this act, is one that has been adjudicated according to law subsequent to a former conviction of the same defendant of an offense of the same character, committed prior to the offense charged in the second indictment.'

"In the case of Commonwealth v. Calio, 155 Superior Court 355, the subject of higher punishments for second offenders was fully considered. In the opinion of Judge Reno the following appears:

" 'The sole question for decision is presented by appellant's contention that punishment for a third offense cannot be inflicted under the statute unless the offense was not only in fact the third illegal sale but that the sale was also effected after two prior convictions.'

" 'The prevailing interpretation given to statutes visiting more severe penalties upon repeated offenders is thus stated in 25 Am. Jur. Habitual Criminals and

Subsequent Offenders: "It is usually essential to the imposition of greater punishment for a second or subsequent offense that there be a conviction or convictions antedating the offense for which sentence is to be imposed. . . . As a general rule, it is a prerequisite that the prior conviction precede the commission of the principal offense, since the statutes are aimed at persons who persist in criminality after having been convicted." The earlier cases in Pennsylvania decided under statutes analagous to the Ice Cream Law establish the prevailing principle in this jurisdiction.' "

First of all, it should be noted that defendant's counsel omits a very significant portion of section 1213. The portion omitted is a section heading which reads as follows: "Section 1213. When certain convictions to be deemed second convictions." The former game law, the Act of May 25, 1923, P. L. 359, contains an identical provision, section 1112, with the same heading.

The Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §554, makes the following provision: "The heading prefixed to chapters, articles, sections and other divisions of the law shall not be construed to control but may be used to aid in the construction thereof."

An examination of the language of section 1213 leads to the conclusion that the authorities cited by defendant are inapplicable because they refer to subsequent offenses rather than to subsequent convictions. In the case of Commonwealth v. Neill, supra, the court called attention to the particular wording in the following language: "and upon conviction for 'any subsequent offense' the prescribed punishment may be . . .".

The Criminal Code of March 31, 1860, P. L. 382, sec. 182, providing for the punishment of second offenses, reads as follows:

"If any person who has been convicted of any offense, other than murder of the second degree for which the punishment prescribed by this code is imprisonment by separate or solitary confinement at labor, shall, after such conviction, be guilty of a similar *offense* . . ." (see 18 PS §5108, historical note).

Obviously, under that statute, there could be no punishment for a second offense unless the offense was committed after conviction and sentence for the prior offense.

Section 1213 of the present game law obviously aims to impose additional penalties upon those sportsmen who are such poor sportsmen that they will repeatedly violate the game laws. Its obvious purpose is to punish the man who has been able to conceal his offense until after the penalty for a subsequent offense has been imposed without regard to the time when the subsequent offense was committed, whether before or after the former convictions. Section 1213, read in conjunction with section 731, gives the magistrate the right, in his discretion, to impose a penalty in proportion to the number of convictions regardless of the time when the offense was committed. The legislature, in its discretion, had a right to authorize the imposition of any reasonable penalty for the first conviction and had a right to confer upon the court the authority to imprison for a first offense. Certainly there is no reason why the legislature could not confer a similar authority to sentence for a third conviction regardless of the date of the commission of the offense. In other words, the text of this section authorizes the imposition of the additional penalty after other penalties have been imposed regardless of the time when the crime took place.

The previous history of this legislation is also significant. The prior legislation, Act of June 17, 1917, P. L. 572, sec. 2, provided as follows:

"For the second or any other offense *after the first offense* the defendant shall, in addition to the penalty prescribed for the first offense, suffer an imprisonment of one day in jail for each dollar of penalty imposed, and shall be denied the right to hunt for a period of two years from the date of his conviction, under a penalty of $25.00 for each day such person may hunt contrary to this provision." (Italics supplied.)

When the legislature codified the laws in 1923, the evils of the previous legislation arising out of the words "after the first offense" must have been obvious. Certainly the use of the word "conviction" instead of "offense" in section 1112 in the Act of 1923, supra, and section 1213 of The Game Law of 1937, and the radical change in phraseology, indicate a very definite intention on the part of the legislature to impose the penalties for the number of convictions regardless of the time when they took place with reference to one another and of the ability of defendant to conceal the prior convictions from the officers and to remove the mandatory jail sentence on the second offense and substitute the discretion of the court. This statute authorized penalties in accordance with the number of crimes committed regardless of the order in which they were committed.

In his anxiety to obviate the impact of the jail sentence defendant contends that the statute authorizes a refusal of the right to hunt for a second offense as defined in this section, but does not authorize the imposition of a jail sentence. Impliedly, he concedes the applicability of this section to this case, contrary to the position previously taken. The intention of the legislature is clear and authorizes the imposition of a jail sentence and the refusal of the right to hunt.

And now, April 5, 1948, the above entitled case having been adjourned, by agreement of parties, to

this date, after careful consideration of the testimony adduced by the Commonwealth and defendant at the trial, when the case was heard and considered de novo by the court, the court finds that defendant, Raymond Vandemark, alias Pat Vandemark, is guilty of violation of section 730 of The Game Law of June 3, 1937, P. L. 1225, in that on November 11, 1947, in the Township of Wilmot, Bradford County, Pa., he did unlawfully fail and refuse to stop a motor vehicle being operated by him on the public highway in Wilmot Township upon the request of N. J. Molski, game warden, whose duty it was to enforce the game laws, said officer being in uniform and displaying the insignia of identification, for the purpose of inspecting and searching said vehicle and its passengers and contents for the unlawful possession, concealment, and transportation of game, and the court further finds that defendant, Raymond Vandemark, previous to the institution of this action, entered a plea of guilty before Lewis E. Woodruff, justice of the peace, November 25, 1947, to a violation of section 704 of The Game Law, and the same day paid a fine of $50 and costs therefor, and that on November 25, 1947, before the same justice, he also entered a plea of guilty to a violation of section 701 of The Game Law, and the same day paid a fine of $100 and costs therefor, the said Lewis E. Woodruff being the same justice before whom the instant case was tried.

The sentence of the court is that you, Raymond Vandemark, pay the costs of prosecution, a fine of $10 to the Commonwealth of Pennsylvania for the use of the parties entitled thereto, and that, in addition thereto, you undergo an imprisonment in the county jail for a period of 10 days, and upon failure to immediately pay the fine and costs, to undergo a like imprisonment for a period of one day for each dollar of fine and costs.