Verbalis *v.* Verbalis, Appellant.

Argued March 1, 1965.    Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Nicholas R. Degillio,* for appellant.

*Irene M. Verbalis,* appellee, in propria persona.

*Reverend Irvin C. Wise,* for amicus curiae.

OPINION BY HOFFMAN, J., June 17, 1965:

John R. Verbalis has appealed from the decree of the Court of Common Pleas of Luzerne County granting a divorce a.v.m. to his wife Irene Verbalis.

As is our duty in divorce cases, we have examined the evidence de novo for the purpose of determining whether the charges alleged in the wife's complaint have been proven.   In addition, we have made an independent investigation of the records of the Court of Common Pleas of Luzerne County relating to a finding that the husband was mentally ill and to his commitment to a mental hospital.   We have further examined the records of the Orphans' Court of that county which concern the appointment of guardians of the husband's estate.[1]

---

[1] Although generally we lack the power to take judicial notice of a record in another case, we have approved such action in di-

On appeal, the wife appeared before us without counsel. We have, therefore, made a special effort to consider any contention which might have been presented on her behalf by counsel.

The facts are these:

The parties were married on September 29, 1943. A complaint in divorce charging cruel and barbarous treatment and indignities was filed by the wife on October 6, 1961 and served personally on the husband on October 26, 1961. A master was appointed and notice of a hearing was served on the husband. The husband did not file an answer nor was there an entry of appearance by counsel on his behalf. He did not appear, either personally or by counsel, at the master's hearing. Only the wife testified before the master. Her testimony contained accounts of terrible beatings dating back to 1944 which would ordinarily support the granting of a divorce on the grounds charged in the complaint. The master believed her, for on December 26, 1961, he filed a report recommending that the divorce be granted.

During January, 1962, after the master's hearing, the husband was detained in the Luzerne County Prison on a charge of fraudulent conversion of property. On January 19, 1962, the warden of that prison petitioned the Court of Common Pleas of Luzerne County to commit the husband to a hospital for mental illness. Two qualified physicians examined the husband on January 23, 1962 and found him to be "mentally ill". Their report stated: "The patient's behavior has been irregular during the past year or more. Recent activities have

vorce proceedings. These proceedings are special in that the Commonwealth is an interested third party in the marriage and has the duty to ascertain all of the pertinent facts. See *Hall v. Hall*, 122 Pa. Superior Ct. 242, 245-246, 186 A. 318, 320 (1936); *Commonwealth ex rel. Branch v. Branch*, 175 Pa. Superior Ct. 373, 376, 104 A. 2d 183, 184 (1954).

shown poor judgment. He has fixed suspicion delusions. There is an indication of the use of sedative drugs." Accordingly, the court committed the husband to the Retreat State Hospital where he has remained until the time of this appeal.[2]

On June 1, 1962, after hearing extensive testimony relating to the husband's paranoid state, the Orphans' Court of Luzerne County found that the husband, ". . . is an incompetent within the meaning of Section 102 of the Incompetents Estate Act of 1955 . . ." Accordingly, it appointed Joseph R. Verbalis, his brother, and James L. Cohen, an attorney, as guardians of his estate.

The divorce case lay dormant for almost two years. Suddenly, on February 4, 1964, notice was served on the husband's guardians that the master's report would be presented to the court on February 18, 1964.

Again a period of three months elapsed. On May 12, 1964, the wife, through counsel, filed a suggestion and motion in the Court of Common Pleas setting forth that the husband had been adjudicated a lunatic and that guardians of his estate had been appointed.[3] There-

---

[2] Pursuant to this finding of mental illness, the Common Pleas Court of Luzerne County on February 13, 1962, granted a rule to show cause which stayed the divorce proceedings ". . . until such time as defendant is again declared mentally competent." The rule was made returnable to the next argument court. However, the husband's attorney never acted upon this rule.

[3] The suggestion stated:

"1. The above named Defendant was duly adjudicated a lunatic and committed to a mental institution on January 28, 1962, the record thereof being filed to No. 256 March Term 1962.

"2. On June 1, 1962, the Orphans' Court of Luzerne County duly appointed Joseph R. Verbalis and Jerome L. Cohen, Guardians of the Estate of John R. Verbalis, Incompetent. The record of this proceeding is filed in Miscellaneous Docket 120, at Page 710.

"3. It is, therefore, suggested that the said guardians, Joseph Verbalis and Jerome L. Cohen, being interested in the estate of the

fore, she moved the court ". . . to order that the names of the aforesaid two guardians . . . be added and the defendant part of the above caption be amended to read 'John R. Verbalis, Defendant, by his Guardians, Joseph R. Verbalis and Jerome L. Cohen.' " In light of this suggestion and motion the court amended the caption of the case, adding the names of the husband's guardians. On September 29, 1964, the court granted the divorce.

As we have already noted, the wife's testimony at the master's hearing was sufficient in itself to justify the entry of this decree. However, in granting this divorce, the lower court apparently did not consider the effect of §53 of The Divorce Law of May 2, 1929, P. L. 1237, 23 P.S. §53, which provides: "Upon the hearing of any case before the court, a master or jury, where the petition or libel sets forth that the respondent is a lunatic, the question of lunacy shall be fully established by expert testimony, together with every other matter of fact that is affirmed by one party and denied by the other. No divorce shall be granted to the libellant, in any such case, unless it be proved beyond a reasonable doubt that the respondent is hopelessly insane, but, if any respondent has been for ten or more years an inmate of any asylum for the insane, it shall be conclusive proof of hopeless insanity."[4]

In light of the confusion which this statute has caused in the past in the minds of some people, it might be well to set out first the areas with which it is not concerned. Section 53 does not declare that hopeless insanity is a ground for divorce.[5] Nor does it relate to

said Incompetent, be added to the caption of the above case as guardians of the said Defendant. All matters herein are of record."

[4] This section was not suspended or affected by Pa. R.C.P. Nos. 1121-1136, 1355, governing the action of divorce or annulment of marriage. See Pa. R.C.P. No. 1409.

[5] Early in its history, as the Act of April 18, 1905, P. L. 211, many courts believed that a new ground for divorce, namely, hope-

whether the defendant was sane at the time of the alleged acts which serve as the basis for the grounds for divorce.

Judge LAUB in *Thies v. Thies*, 57 Pa. D. & C. 468, 473 (1946), set forth clearly and correctly the structure and aims of this statute: "It will be observed that this section specifically prohibits the grant of a divorce in any case where insanity is alleged in the libel unless it be proved beyond a reasonable doubt that respondent is hopelessly insane. Therefore, if the proof falls short of this mark and rises only to the point where temporary insanity is established, the act constitutes a specific barrier against the entry of a decree.

". . . It provides a mantle of protection for respondents temporarily insane by prohibiting the procurement of a divorce for the duration of such temporary mental incapacity, thus giving to this class of respondents an opportunity after cure to interpose such defenses as they may have."

Judge WOODSIDE'S statement in *Schwarzkopf v. Schwarzkopf*, 176 Pa. Superior Ct. 441, 445, 107 A. 2d 610, 612-613 (1954), demonstrates clearly the impact of §53 on this case:

"The defendant not having been an inmate of an 'asylum for the insane' for ten years or more, it was necessary for the plaintiff to fully establish by expert testimony the question of lunacy and to prove beyond a

---

less insanity, had been created. Several divorces were granted under this assumption. However, in *Baughman v. Baughman*, 34 Pa. Superior Ct. 271 (1907), and *Johnston v. Johnston*, 34 Pa. Superior Ct. 606 (1907), we held that the act did not create a new ground for divorce but merely provided a procedure where divorce was sought from an insane spouse. The legislature adopted this view in 1909 by passing Act No. 219 of May 3, 1909, P. L. 390, §1, which validated all decrees granted under the mistaken assumption that hopeless insanity had been made a ground for divorce. See also Act of May 13, 1927, P. L. 991, §1.

reasonable doubt that the defendant is hopelessly insane . . .

"It is to be noted that not only must the question of lunacy be established by 'expert testimony' but that [his] insanity is hopeless must be 'proved beyond a reasonable doubt'. No effort having been made to prove this, under the aforesaid statutory provision no divorce could be granted."

The fact that the husband in the instant case was not committed to a hospital for the mentally ill until after the master's hearing does not alter this result. The statute is designed to delay divorce actions until such time as the temporarily insane spouse may adequately defend himself. It contemplates that ". . . No *divorce* shall be granted . . . in any such cases . . ." [emphasis added]. Its effect is not limited to only one stage of the proceedings.

To conclude that the husband was afforded such protection if he was sane only during the master's hearing would be contrary to reason. The report of a master is advisory only and is not controlling on either the reviewing court or the appellate court. It comes to the court without any preponderate weight or authority which must be overcome. The parties may file exceptions to the master's report and present arguments thereon. The lower court is required to consider the evidence de novo and reach an independent conclusion on the merits. *Pasternak v. Pasternak,* 204 Pa. Superior Ct. 339, 341, 204 A. 2d 290, 291 (1964); *Rankin v. Rankin,* 181 Pa. Superior Ct. 414, 417-418, 124 A. 2d 639, 641 (1956). Thus this crucial period in divorce proceedings comes after the filing of the master's report. It is during this period that the insane spouse must receive the protection intended by §53.

Our interpretation of §53 is especially relevant in this case. The physicians' report indicated that, in

fact, the husband had been mentally ill for many months prior to the institution of these proceedings. It would seem clear that §53 is not designed to protect only those spouses who are fortunate enough to be adjudicated insane and have guardians appointed before the proceedings have commenced. "[T]here exists in these circumstances the necessity that the apparent wrongdoer, rendered incompetent by subsequent insanity, be afforded every safeguard against the triumph of an unfounded suit inadequately defended because of his disability." 2 Freedman, Law of Marriage and Divorce in Pennsylvania §505 at 1047 (2d ed. 1957).

Similarly, the failure of the wife to set forth in her complaint that the husband was a lunatic will not bar the application of §53. In *Boyer v. Boyer,* 163 Pa. Superior Ct. 520, 63 A. 2d 495 (1949), the fact of insanity was not pleaded in the libel. This information was contained in a petition by the defendant-spouse's relatives for the appointment of a committee ad litem. We held in the *Boyer* case that the plaintiff, in order to obtain service of process, had adopted the averments of insanity contained in the relatives' petition. We concluded, therefore, that in light of §53, "When that fact [of insanity] appeared the libellant could not further prosecute the action until sanity was restored or until [she] proved that [he] was hopelessly insane."[6]

In the instant case, the fact of lunacy was set forth not by the husband's relatives but by the wife herself. In a suggestion[7] and motion presented to the lower court she moved for the amendment of the caption of this case to include the names of the husband's guard-

---

[6] In *Boyer* the fact of insanity was set forth before the divorce proceedings had commenced. As we have already explained, however, if this information is made known at any time, the result would not be altered, since the intent of the statute is to protect the insane spouse throughout the proceedings.

[7] See note 3, supra.

ians. The suggestion and motion, in conformance with the language of §53, set forth that the husband had been "adjudicated a lunatic" and had been committed to a mental institution. They further set forth that the Orphans' Court had appointed guardians of the estate of the husband. Thus, as in the *Boyer* case, the fact of insanity was clearly before the lower court.

We appreciate the lower court's great patience and concern in attempting to insure that these proceedings would be fair for both parties. However, the legislature has indicated in §53 the Commonwealth's special interest in protecting the temporarily insane defendant in divorce proceedings. This section mandates that no divorce shall be granted if the defendant-spouse is temporarily insane until sanity is restored or until the insanity is proved hopeless. When the trial judge was made aware of the husband's insanity, it was his duty to refer the case back to the master for a complete inquiry into the husband's mental condition.

We are not convinced that this statute, in its present form, is socially desirable. In this day of psychiatry, chemotherapy and other techniques, the burden on the plaintiff of proving that the defendant is hopelessly insane beyond a reasonable doubt or, in the alternative, that he has been an inmate of an insane asylum for ten years may be unduly harsh.

Indeed, if the sane spouse clearly establishes her grounds for divorce and if the rights of the incompetent spouse are protected by a guardian ad litem appointed by the court, it is difficult to see why the divorce should be refused if the insanity is of uncertain duration. For a penetrating analysis of this problem see 2 Freedman, Law of Marriage and Divorce in Pennsylvania §505 (2d ed. 1957).

The decree of the Court of Common Pleas of Luzerne County is vacated and the record is remanded to that court for the sole purpose of inquiring into ap-

pellant's mental condition in light of the considerations set forth in this opinion.

WRIGHT and WATKINS, JJ., would affirm on the opinion of the court below.