## Kelly v. Kelly

*R. Merle Heffner*, for plaintiff.

HIMES, P. J., June 11, 1968.—This divorce proceeding presents the novel question as to the court's obligation where, without counsel, a wife-defendant living in New York State, writes to the master stating that she cannot afford to attend the master's hearing.

In capsule, the following is the factual situation:

David Franklin Kelly and Carol Ann Kelly, of the ages of 31 and 30 years, respectively, were married April 7, 1956, and they are the parents of five living children, ranging in ages from 2 to 10 years. Three months after the Quarter Sessions Court of this county ordered him to pay $21 per week toward his wife's support, the husband commenced a divorce action against the wife. Following receipt of a letter from wife-defendant, living in Piermont, New York, stating that she did not want to "give him a divorce", but that she could not afford the expense of attending a hearing, the master held a hearing on the scheduled date in her absence, and the following day wrote a letter to her advising that another hearing would be held two weeks later to give her an opportunity to appear. The master received no reply from defendant, who did not appear for the second scheduled hearing, following which he submitted his report in which he recommended that the court grant an absolute decree of divorce.

A suit in divorce is not an ordinary civil proceeding; it is a special form of action in which the State is an interested third party: Teriberry v. Teriberry, 210 Pa. Superior Ct. 54, 232 A. 2d 201 (1967).

Further, the court is under a duty to ascertain all pertinent facts and may take notice of the record in another case, or communicate with the clerk of the court in another State relative to another case: Commonwealth ex rel. Branch v. Branch, 175 Pa. Superior Ct. 373 (1954). In Hall v. Hall, 122 Pa. Superior Ct. 242 (1943), it was stated that the court may of its own motion go into the inquiry of matters not involved in the pleadings. See, also, opinion of Judge Shughart in Oyler v. Oyler, 10 Cumb. 124 (1960).

An examination of the records of the quarter sessions and juvenile court of this county, together with the record in this divorce case, discloses more fully the voyage of these parties since they first launched on the sea of litigation.

On August 15, 1966, the wife filed an information seeking support for herself and 5 children, ranging from 2 to 10 years of age, alleging that on July 19, 1966, the husband had deserted them. At the hearing before the court in October, 1966, Q. S., Crim. Action 1966, no. 238, Huntingdon County, it appeared that the wife was pregnant expecting a sixth child in December. The wife lost this child in November, 1966. The wife claimed that the reason her husband had left her was his interest in another woman, Gladys Homman. The husband denied any such interest, stating that he merely boarded in Mrs. Homman's home, contending that his separation from his wife occurred as a result of the deteriorating relationship between them, allegedly brought about by her deplorable house-keeping, her failure to prepare his meals and to take care of his laundry, and her failure to make any effort to change her habits.

On October 25, 1966, after hearing testimony of husband and wife, the quarter sessions court ordered husband to pay the following: $30 per week for support of the wife and 5 children; rent in the sum of $40 per month on the home in which the wife and children had remained following the husband's separation; water rent thereon estimated at $3.50 per month; monthly bills for electric service, and to make payments on certain domestic equipment in the home.

Nine months later, on July 27, 1967, pursuant to petition of Huntingdon County Child Welfare Services addressed to the juvenile court, April Sessions, 1967, no. "E", alleging that the five children were dependent and neglected, living in a home structural-

ly condemned, filthy and inadequate, a hearing was held and an order entered finding the children neglected and dependent and placing them in the custody of Huntingdon County Child Welfare Services.

On August 18, 1967, the husband presented a petition for rule to show cause why the original support order of October 25, 1966, at Q. S., Crim. Action 1966, no. 238, should not be amended to relieve the husband of any further obligation to contribute toward the support of his wife and to otherwise modify the order. On October 17, 1967, after hearing on this rule, the court refused to relieve the husband of the duty to support his wife, but modified the original support order so as to provide for payments of $21 weekly toward the wife's support and a similar sum toward the support of the children.

Approximately three months later, on January 22, 1968, plaintiff instituted this proceeding in divorce by filing a complaint against his wife, Carol Ann Kelly, on the ground of indignities to the person, and on January 24, 1968, a copy of the complaint was served by mail on defendant-wife at 439 Main Street, Piermont, New York. On February 14, 1968, the court appointed a master who fixed March 12, 1968, at his office in Huntingdon, Pa., as the time and place of hearing, serving written notice thereof upon the wife-defendant by certified mail at her New York State address on February 21, 1968.

No appearance was entered by or in behalf of defendant-wife, but by letter postmarked March 6, 1968, Piermont, New York, she wrote to the master stating, inter alia, "Well it like this & I am very sorry it I just can't make it back and I can't afford it . . . " The master received this letter prior to the hearing which was held March 12, 1968.

On March 13, 1968, the master sent a letter, apparently by ordinary mail, to the wife-defendant, in-

forming her that a hearing had been held in the divorce proceeding, adding, ". . . I have not closed the testimony in order to give you an opportunity to appear and offer testimony as you so desire", stating that the hearing would be continued until March 26, 1968, at the office of the master in Huntingdon, Pa. The master received no reply from wife-defendant and subsequently submitted to the court his report, recommending that plaintiff-husband be granted an absolute divorce from the wife-defendant on the ground of indignities to the person.

It has been held repeatedly that a wife is entitled to an allowance for such reasonable expenses as may be necessary during the pendency of the suit. Orders for expenses are based upon elementary principles of justice; to hold otherwise an injured wife would be at the mercy of her husband. The authority of the court to order expenses for the benefit of the wife in defending a divorce action is necessary, and it should be exercised where the wife is in poverty; otherwise, she could be defeated in an unjust suit prosecuted by her husband against her. It has been held that where the husband is plaintiff, he will not be permitted to proceed without providing the necessary *expenses* for his wife, even though he himself may be without funds, for otherwise his poverty might permit him to perpetrate injustice upon his wife. See 2 Freedman, Law of Marriage and Divorce in Pennsylvania, pages 978-982.

The merits of plaintiff's claim are not presently the issue or concern of the court; the wife's right to be heard and represented by counsel ought to be and is the court's present concern. The continuance of the hearing for two weeks failed to meet the problem.

It is believed that the failure of this wife-defendant, who had no lawyer, to petition the court for a rule to show cause why she should not be awarded

counsel fees and expenses furnishes no just basis to deprive her of representation either on the issue of whether she is entitled to counsel fees and expenses or in resisting the proceeding on its merits. Petitions and rules to show cause are unknown to persons unlearned in the law, and under all the circumstances this wife-defendant's plea by letter should not be lightly brushed aside by the court because of the absence of customary form and affidavit. The Supreme Court of the United States, in another context, despite an almost overwhelming workload, in an effort to make certain that injustice was not perpetrated upon a defendant convicted of a criminal offense, appointed counsel on the strength of his unsworn letter. A common pleas court ought to do no less under the circumstances of this divorce proceeding.

There can be no equality before the law unless representation is afforded to those persons who are financially unable to employ a lawyer. The trend today is to afford everyone his day in court with proper legal representation: Cunha v. Cunha, 44 D. & C. 2d 230. See Article, The OEO Legal Services Program— The Legal Frontier of Our Time, October, 1967 issue Pennsylvania Bar Association Quarterly.

It is conceivable that under unusual circumstances a husband-plaintiff might not be required to pay fees for counsel to represent his wife. However, in such a situation it is the responsibility of the court and the bar to see that counsel is available for a wife unable to employ one. In his capacity as district attorney, Warren R. Yocum, Jr., Esquire, represented Mrs. Kelly in the support proceeding herein recited. Although no longer district attorney, in commendable recognition of the responsibility of the bar toward the poor, he has agreed to represent Mrs. Kelly in this divorce case, and to do so without compensation for fees in the event subsequent developments should not

justify an order requiring payment by plaintiff. It is difficult to contemplate how plaintiff-husband in this case could be relieved of the normal duty of advancing expenses, apart from counsel fees, to enable his wife to defend herself.

### ORDER

Now, June 11, 1968, the court appoints Warren R. Yocum, Jr., Esquire, to serve as counsel for Carol Ann Kelly in this divorce action; all proceedings to be stayed for a reasonable time to enable him to communicate with Mrs. Kelly and thereafter to file such pleadings as may be appropriate in the event Mrs. Kelly should desire to enter into a defense.